

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

January 9, 1974

The Honorable Bevington Reed
Commissioner
Coordinating Board
Texas College & University System
P. O. Box 12788, Capitol Station
Austin, Texas 78711

Opinion No. H-203

Re: Whether church-related
educational institutions
participating in the Tuition
Equalization Grant Program
are prohibited from limiting
employment to those of a
particular religion

Dear Dr. Reed:

You have requested our opinion on the question:

> "[W]hether. . . church-related educational
> institutions participating in the Tuition Equali-
> zation Grants Programs are prohibited from
> using employment practices which require
> adherence to a particular religion."

It is asked against a factual background identifying an institution of
higher education, whose bylaws state, in their preamble:

> "[The College] shall stand as a witness for Jesus
> Christ expressed directly through its administration,
> faculty and students. To assure the perpetuation
> of these basic concepts of its founders it is resolved
> that all those who become associated with [the college]
> as a trustee, officer, member of the faculty or of
> the staff must believe in the divine inspiration of the
> Bible, both the Old Testament and New Testament,
> that man was directly created by God, the virgin
> birth of Jesus Christ, our Lord and Saviour as the

> Son of God, that He died for the sins of all men
> and thereafter arose from the grave, that by repentance
> and the acceptance of and belief in Him, by the grace
> of God, the individual is saved from eternal damnation
> and receives eternal life in the presence of God; and it
> is further resolved that the ultimate teachings in this
> college shall always be consistent with the above prin-
> ciples."

The College, has refused to hire a person of the Jewish faith for a staff position solely because of the applicant's religion. She was informed this was its established policy.

Subchapter F of chapter 61, Texas Education Code (formerly Article 2654h, V. T. C. S. ), authorizes the Coordinating Board, Texas College and University System, to provide tuition equalization grants from appropriated funds to Texas residents enrolled in approved Texas colleges or universities under certain circumstances. (See Acts 1973, 63rd Leg., p. 78, ch. 51). Section 61. 229 of the Code now provides in its subsection (b):

> "The coordinating board shall make such
> regulations as may be necessary to comply with
> the provisions of Article I, Section 7 . . . and
> other parts of the Texas Constitution."

Article 1, §7, of the Constitution provides:

> "No money shall be appropriated, or drawn
> from the Treasury for the benefit of any sect, or
> religious society, theological or religious seminary;
> nor shall property belonging to the State be appropriated
> for any such purposes."

In Attorney General Letter Advisory No. 47 (1973), addressed to the Chairman of the Senate Committee on Finance, we reviewed the constitutionality of Article 2654h as it related to separation of church and state and of the proposed Appropriation Act provision implementing it. We said:

"We are of the opinion that Article 2654h, and the appropriation of funds for that program, reflect a proper secular legislative purpose and are constitutional, so long as the Coordinating Board under its regulations, administers the program so as to avoid the advancement or inhibition of religion and so as to avoid the use of public funds or property for the benefit of sects, religious societies, or theological or religious seminaries, in turn avoiding 'excessive entanglements.'"

In arriving at that conclusion we remarked:

"We have not been asked to pass upon, and do not pass upon, the constitutionality of any particular grants to specific individuals attending particular schools. Indeed, that fact finding process is beyond both the scope of your request and the competence of this office. The courts have reviewed, in passing upon these questions, the precise nature of the schools and programs involved, the precise percentage of public funds going to denominational schools, and a host of other factual matters which can only properly be determined by an administrative body or a court."

Your present request presents certain facts to be true, and our answer here is so limited. This office cannot resolve factual disputes, and our opinion regarding the law applicable to a given set of facts should not be considered a finding that such facts exist.

Subsequent to the issuance of Letter Advisory No. 47, pursuant to a request by the Secretary of the Coordinating Board, we issued Attorney General Opinion H-66 (1973) which again reviewed the constitutionality of Tuition Equalization Grants in the light of recent opinions by the Supreme Court of the United States. We reaffirmed the conclusion reached by LA No. 47 and said:

"Article 1, §7 of the Texas Constitution is more restrictive than the federal charter . . . and will not

tolerate, in our opinion, any aid to sects or sectarian schools. Denominational schools are not necessarily sectarian in that sense, and some schools with sectarian programs may be able to effectively separate their secular programs from the sectarian remainder so that the use of funds for the one does not have the effect of subsidizing or furthering the other. The dividing lines are delicate but must be sharply drawn so that public funds are not put to sectarian uses."

In considering the meaning to be given the term "sectarian schools" in the constitutional sense, we quoted from language in Church v. Bullock, 100 S. W. 1025 (Tex. Civ. App., 1907, aff'd 109 S. W. 115):

" ' In view of the . . . constitutional provisions, we conclude that the words used. . . must have been intended by the people who ratified them to provide against the promulgation or teaching of the distinctive doctrines, creeds or tenets of any particular Christian or other religious sect in schools or institutions where such instruction was to be paid for out of the public fund, or aided by such funds or by public grants. . . . ' "

Speaking of the responsibility of the Coordinating Board to promulgate rules and regulations for the implementation of the Tuition Equalization Grant program, we said in H-66:

"Rules should be so framed that institutions having the characteristics attributed to [schools with which recent U. S. Supreme Court decisions were concerned] will not be the beneficiary of Tuition Equalization Grants. Individual recipients should not include those, for instance, attending seminaries or divinity schools, nor should tuition paid from public funds for a student be in anywise comingled with funds used to defray the cost, expense or upkeep of sectarian programs or facilities. Mere church sponsorship of an institution would not seem by itself

> to be ground for disqualification, but every possi-
> bility of a grant having more than an indirect or
> incidental effect upon the advancement of religion
> must be eliminated. "

In *Committee for Public Education and Religious Liberty v. Nyquist*, ___U.S.___ (1973), and in *Levitt v. Committee for Public Education and Religious Liberty*, ___U.S.___(1973), the Supreme Court of the United States struck down a program of aid to private schools described in H-66 as one where:

> "[Q]ualifying institutions . . . 'could be' ones which
> [1] imposed religious restrictions on admission, [2]
> required attendance at religious services, [3] <u>required
> obedience to the doctrines and dogmas of a particular
> faith</u>, [4] required students to attend instruction in the
> theology or doctrine of a particular faith, [5] <u>were an
> integral part of the religious mission of the church
> sponsoring it</u>, [6] <u>had as a purpose the inculcation of
> religious values</u>, [7] <u>imposed religious restrictions
> of faculty appointments</u>, and [8] <u>imposed restrictions
> on what or how the faculty may teach</u>. " (emphasis added)

It is not necessary, in our opinion, that <u>all</u> these elements be present in order to render an institution "sectarian" under either the federal or the state Constitution. It is enough under the Texas constitutional prohibition against use of public funds that an institution requires obedience to the dogmas of a particular faith on the part of its staff members and refuses to have a person as a staff member because of that person's religious belief.

In our opinion, discrimination among staff members on the basis of religious affiliation or religious views, in policy or in practice, is very strong evidence that the institution is sectarian and that funds channeled through it would be used to promote or inhibit religion.

In answer to your inquiry therefore, it is our opinion that the Coordinating Board would abuse the discretion vested in it by § 61.229(b), Texas Education Code, if it approved participation in the Tuition Equalization Grant

program by an institution which, in the factual context presented to us, follows a policy or practice of refusing to hire non-Christians for staff positions solely because of their religion. See Attorney General Letter Advisory No. 47 (1973), Attorney General Opinion H-66 (1973).

## SUMMARY

Where an institution of higher education requires as an established fixed policy that all of its trustees, officers, faculty and staff members acknowledge belief in and adhere to particular and detailed religious doctrines and refuses to hire a person as a staff member because of the person's religious beliefs, it would be an abuse of discretion for the Coordinating Board, Texas College and University System, to find the institution qualified to participate in the Tuition Equalization Grant program as a non-sectarian institution.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee